# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ST. CLAIR MARINE SALVAGE, INC.
a Michigan corporation,

        Plaintiff,

v.                                                          Case No. 14-CV-10432
                                                            Honorable Denise Page Hood

THAT UNNAMED 1986 36 FOOT
CATALINANA 2982, her engines, tackle,
apparel, furniture, equipment and all other
necessaries appertaining and belonging, in rem,
and ALAN S. DAVENPORT,

        Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [#16] AND CLOSING CASE

This matter is before the Court on Plaintiff St. Clair Marine Salvage, Inc. ("St. Clair") Motion for Entry of Default Judgment **[Docket No. 16, filed June 2, 2014]**. For the reasons stated below, Plaintiff's Motion for Entry of Default Judgment is **GRANTED**.

## I.    Background

Plaintiff, St. Clair, is a Michigan corporation with its principal place of business in Harrison Township, Michigan.  St. Clair alleges that on July 7, 2012, it received a distress call from Defendant Davenport indicating that a vessel, a 1986 36-

foot Catalina sailboat ("the Vessel")—which Plaintiff believes is currently located in this District—was "hard aground against a sea wall near the Nine Mile stretch of Lake St. Clair." **[Compl. ¶ 6]** Plaintiff claims that in response to the distress call, it dispatched a salvage vessel to assist Defendant Davenport and the Vessel.  Upon arrival with the salvage vessel, Plaintiff states that it "found the Vessel hard aground in approximately 2.5 feet of water." **[Compl. ¶ 8]**  Plaintiff contends that the Vessel has a 4 foot draft.

Plaintiff St. Clair contends that it and Defendant Davenport entered into a Salvage Agreement which provided for payment by Defendant Davenport to St. Clair for salving the Vessel in the amount of $250.00 per foot of the Vessel. **[Pl. Mot., Ex. B, Salvage Agreement]** St. Clair "used a salvage vessel equipped to clear and dredge the ground under the Vessel and pull it into deeper water." **[Compl. ¶ 10]** Plaintiff asserts that the Vessel was unable to operate on its own once it reached deeper water because a halyard line had wrapped around its propeller.  Defendant Davenport requested that St. Clair tow the Vessel to port and St. Clair towed the Vessel to the Jefferson Beach Marina.

The following day, at what Plaintiff claims to have been Defendant Davenport's request, St. Clair dispatched a diver to the Jefferson Beach Marina to remove the halyard line from the Vessel's propeller.  Following removal, Plaintiff

sent Defendant Davenport an invoice.  The invoice requested payment in the amount of $10,300.00 for salving, towing and removing the halyard line from the Vessel's propeller. **[Pl. Mot., Ex. C, Invoice]**

Plaintiff requested that Defendant Davenport pay the salvage, towing and repair charges as provided for under the Salvage Agreement and Invoice, but Defendant Davenport initially failed to make the payment.  By signing the Salvage Agreement, Defendant Davenport agreed to pay St. Clair its costs and attorney fees incurred in an attempt to collect any amounts due under the Agreement. ("Enforcement: The Owner shall pay Salvor's reasonable attorney's fees, costs, and any arbitration fee in the event collection of amounts due under this Salvage Agreement is begun, whether suit, small claims, arbitration be commenced or not." **[Pl. Mot., Ex. B, ¶8]**

As of January 2, 2014, Defendant Davenport was alleged to owe $11,700.00, which did not include the interest, costs, and attorney fees that continued to accrue after January 2, 2014.  Specifically, Defendant Davenport owed $10,300.00 on the contract:  $9,000.00 for the salvage and towing of the Vessel and $1,300.00 for the diver.  The remaining $1,400 were the calculated cost and fees at the time the Complaint was filed.  On May 2, 2014, Defendant Davenport remitted payment to St. Clair in the amount of $10,300.00.

3

## II.    ANALYSIS

Federal Rule of Civil Procedure 55, which governs default, provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). The first step toward obtaining a default judgment is for a plaintiff to obtain a "clerk's entry of default." *See Shepard Claims Serv. Inc. v. Williams Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986) (explaining that an Entry of Default under Federal Rule of Civil Procedure 55(a) is the first procedural step necessary to obtain a default judgment). Rule 55 further provides that a default judgment may then be obtained in two different ways, which depend upon the nature of the relief sought by the Plaintiff. If the claim against a defendant is "for a sum certain or for a sum which can by computation be made certain" the Court Clerk may enter a default judgment for that amount. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party entitled to a judgment by default shall apply to the court" for a default judgment. Fed. R. Civ. P. 55(b)(2).

In this case, the Clerk filed an Entry of Default on April 22, 2014. The Court is satisfied that the entry of this default was justified pursuant to Fed. R. Civ. P. 55(a) as Defendant failed to plead or otherwise defend after it was properly served with a

4

summons and a copy of the Complaint.[1] **[Docket No. 8, Certificate of Service/Summons Returned Executed. Alan S. Davenport served on 3/21/2014, answer due 4/11/2014]** The Court also notes that on April 22, 2014, Plaintiff filed a Request for Clerk's Entry of Default Judgment in the amount of $11,924.00. **[Docket No. 13]** On April 28, 2014, the Clerk entered a Notice of Denial of Request for Clerk's Entry of Judgment **[Docket No. 15]** because the "[a]mount requested cannot include attorney fees."

The Court is satisfied, after review of the Salvage Agreement **[Ex. B]**, July 11, 2012, Invoice **[Ex. C]**, and Affidavit of Attorneys' Fees including the attached documentation **[Ex. H]**, that at this time Plaintiff has incurred $2,676.50 in costs and fees which include $2,002.50 in attorney's fees and $674.00 in costs. Contractual provisions obligating a breaching party to pay reasonable attorney's fees are generally valid and judicially enforceable under the same standard as other contractual

---

[1] Plaintiff states that service was made on Defendant, Alan Davenport, by:

1. tacking or firmly affixing the Summons, Complaint, and Motion to the door at Defendant's last known address located at 659 Liberty Pointe, Ann Arbor, Michigan, 48103 on March 21, 2014 at 8:00pm; and

2. delivering the Summons, Complaint and Motion via Certified Mail, Return Receipt Requested to the Defendant's last known address located at 659 Liberty Pointe, Ann Arbor, Michigan 48103 on March 19, 2014.

5

provisions. *See City of Otsego v. Walters*, 2007 WL 4125367, *4 (Mich. App. Nov. 20, 2007) ("The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees, and such provisions are judicially enforceable.") (quoting *Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 219 Mich.App. 190, 555 N.W.2d 733 (1996)).

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Entry of Default Judgment against Defendant Alan Davenport in the amount of $2,676.50 **[Docket No. 16, filed June 2, 2014]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this Order closes the case.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 20, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 20, 2014, by electronic and/or ordinary mail.

S/Julie Owens acting in the absence of LaShawn R. Saulsberry
Case Manager